******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BENCHMARK MUNICIPAL TAX
SERVICES, LTD. *v.* 899
ETG ASSOCIATES,
LLC, ET AL.
(AC 46547)

Cradle, Suarez and Clark, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned
by the named defendant, E Co. E Co. executed a promissory note in
the plaintiff's favor, which was secured by a mortgage on the property.
E Co. subsequently entered into a modification agreement with the
plaintiff that increased the amount of the principal in exchange for a
six month extension of the maturity date. E Co. thereafter defaulted on
the mortgage and the defendants requested a second extension, which
the plaintiff refused. The plaintiff also alleged that the defendant guaran-
tors had breached their guarantees. The defendants asserted the special
defense of unclean hands, claiming that the parties had negotiated for
an additional extension of time regarding the maturity date, which the
plaintiff refused to honor. In opposition to the plaintiff's motion for
summary judgment as to liability, the defendants submitted an affidavit
from the defendant S, who signed the modification agreement on E Co.'s
behalf. S averred that E Co. entered into the modification agreement
in reliance on the plaintiff's false promise to grant an additional extension
of the maturity date. The trial court granted the plaintiff's motion for
summary judgment, and rendered a judgment of strict foreclosure, from
which the defendants appealed to this court. *Held*:

1. The appeal was dismissed as to the guarantor defendants for lack of
standing; it was undisputed that none of the guarantor defendants was
a party to the note, mortgage or modification agreement, and neither
the plaintiff nor the defendants alleged that the guarantor defendants
had any interest in the property or a right of redemption.

2. The trial court properly granted the plaintiff's motion for summary judg-
ment as to liability: because the text of the modification agreement
expressly addressed the question of further extensions, specifically pro-
viding that the maturity date "shall not be further extended" past the
initial six month extension, the trial court properly concluded that the
modification agreement was integrated on this point; moreover, S's
affidavit was insufficient to raise a genuine issue of material fact as to
the defendants' unclean hands defense, as E Co. could not manufacture
a material factual dispute as to the parties' intent by pointing to parol

evidence of negotiations that contradicted the express written terms of the modification agreement, even by way of a sworn affidavit.

Argued May 23—officially released August 20, 2024

*Procedural History*

Action, inter alia, to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Spader, J.*, granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Spader, J.*, rendered judgment of strict foreclosure, from which the defendants appealed to this court. *Appeal dismissed in part*; *affirmed*; *further proceedings*.

*Kyle R. Barrett*, for the appellants (defendants).

*Juda J. Epstein*, with whom, on the brief, was *Matthew M. Hausman*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this foreclosure action, the defendants—the owner of certain mortgaged real property and four alleged guarantors—jointly appeal the judgment of strict foreclosure rendered in favor of the plaintiff, Benchmark Municipal Tax Services, Ltd.[1] On appeal, the defendants argue that the trial court, in granting the plaintiff's motion for summary judgment as to liability, improperly determined that there was no genuine issue of material fact as to the defendants'

---

[1] In its operative revised complaint, the plaintiff named 899 ETG Associates, LLC, David Silberstein, Tsiri Silberstein, Silver Mount, LLC, and Silver Mount Two, LLC, as defendants. 899 ETG Associates, LLC, is alleged to be the owner of the subject property and a party to a promissory note and mortgage with respect to that property. David Silberstein, Tsiri Silberstein, Silver Mount, LLC, and Silver Mount Two, LLC, are alleged to be guarantors of the subject note and mortgage. In this opinion, we refer to all defendants collectively as the defendants, and to David Silberstein, Tsiri Silberstein, Silver Mount, LLC, and Silver Mount Two, LLC, collectively as the guarantor defendants. We refer to the individual defendants by name when necessary.

special defense of unclean hands. For the reasons that follow, we dismiss the appeal as to the four guarantor defendants and affirm the judgment of the trial court.

The following procedural history is relevant to this appeal. On November 2, 2021, the plaintiff filed a five count revised complaint against the defendants seeking, inter alia, to foreclose on a mortgage securing certain real property located at 899 Ella T. Grasso Boulevard in New Haven (property). In count one, the plaintiff alleged that, on September 19, 2019, 899 ETG Associates, LLC (899 ETG), executed a promissory note in the plaintiff's favor in the principal amount of $600,000, secured by an open-end mortgage deed on the property. The plaintiff further alleged that, on September 17, 2020, 899 ETG executed a "Mortgage and Note Modification Agreement" (modification agreement) that increased the amount of the principal to $655,000, and that 899 ETG defaulted on March 18, 2021. The plaintiff sought to accelerate the balance due and to foreclose on the mortgage. In the remaining four counts, the plaintiff named the other four defendants as guarantors of 899 ETG's note and mortgage and alleged that they had breached their guarantees.

On March 3, 2022, the defendants filed an answer and special defenses. As relevant to this appeal, they asserted the special defense of unclean hands, claiming that "the parties negotiated for an extension of time with regard to the date when the debt which is the subject of [this] action would mature and the plaintiff thereafter refused to honor said extension agreement."[2]

On July 7, 2022, the plaintiff moved for summary judgment as to liability. In support of its motion, the

[2] The defendants also asserted as a special defense that the plaintiff had failed to properly and accurately account for payments they had tendered. The defendants' counsel, however, abandoned this defense before the trial court during oral argument on the plaintiff's summary judgment motion and the defendants have not pursued it on appeal. As such, we do not consider it.

plaintiff attached, inter alia, copies of the original promissory note, mortgage deed, and notice of default. The plaintiff also attached a copy of the modification agreement, as well as an affidavit from Mark Zucker, the plaintiff's president (Zucker affidavit).

The Zucker affidavit averred the following: 899 ETG executed a mortgage on the property in favor of the plaintiff on September 19, 2019, as security for a promissory note in the principal amount of $600,000. Under the terms of the original note, the defendants were to make principal payments for the complete amount of their indebtedness on or before the maturity date, September 18, 2020. The defendants, however, subsequently requested an extension of the maturity date, and, on September 17, 2020, the plaintiff granted a six month extension to March 18, 2021, in exchange for a $55,000 increase in the amount of the principal and $30,093 in fees. The plaintiff indicated that no further extensions would be granted. The defendants failed to remit payment and requested a second extension. Notwithstanding the plaintiff's earlier refusal to grant an additional extension, "new terms were proposed for a second extension to allow the [d]efendants time to refinance and cure the default," but the defendants refused those terms. As such, the defendants were now in default.

The modification agreement reflected that, as averred in the Zucker affidavit, the plaintiff and 899 ETG had agreed, on September 17, 2020, to modify the maturity date to March 18, 2021, and to increase the amount of the principal by $55,000. The modification agreement specified that the maturity date "shall not be further extended." The modification agreement was notarized and signed by the defendant David Silberstein, acting

on 899 ETG's behalf as its duly authorized "Member-Manager." The modification agreement did not include a merger clause.[3]

On October 11, 2022, the defendants filed their objection to the plaintiff's motion for summary judgment. They argued that there was a material issue of fact as to their special defense of unclean hands. The only evidence that they produced in support of their objection was an affidavit from David Silberstein (Silberstein affidavit). The plaintiff did not file a reply to the defendants' objection.

The Silberstein affidavit averred the following: In September, 2020, 899 ETG entered into negotiations with the plaintiff's representative for an extension of the maturity date of the mortgage and the note. On September 10, 2020, the plaintiff's representative "advised [the] [d]efendant . . . that the maturity date could be extended up to a year." In reliance on this representation, 899 ETG executed the modification agreement for a six month extension, paid the $30,093 in fees, and agreed to an increase in the amount of the principal by $55,000, with the understanding that an additional six month extension would be available. 899 ETG would not have agreed to pay these fees and to increase its indebtedness by that amount had it not believed it would receive an additional extension. Subsequently, in March, 2021, 899 ETG requested that the maturity date be extended by six more months, but the plaintiff refused to grant this request, contrary to the previous representations of the plaintiff's representative. As a result of the plaintiff's refusal to extend the maturity date, 899 ETG defaulted on the note and mortgage.

---

[3] A merger clause, also known as an integration clause, is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." Black's Law Dictionary (12th Ed. 2024) p. 962.

The trial court, *Spader*, *J.*, heard oral argument on the plaintiff's motion on December 12, 2022. The following day, the court issued a memorandum of decision granting summary judgment as to liability in favor of the plaintiff on count one of the revised complaint. The court concluded that "[t]he plaintiff has set forth its prima facie case for a commercial foreclosure, including providing the court with proof of compliance with the terms of the commercial note and mortgage, as modified, in terms of noticing, evidence of default, and the plaintiff's holdership status of the note and mortgage." The court further determined that there was no genuine issue of material fact as to the defendants' unclean hands defense. Notwithstanding 899 ETG's claim that the plaintiff had offered it an additional six month extension of the maturity date, the court noted, the fact that 899 ETG had shortly thereafter signed the modification agreement—which "specifically stat[ed] there would be no further extensions"—undercut its claim that the plaintiff had acted dishonestly. The court reasoned that "[c]ommercial parties negotiate terms of their agreements and reduce them to writing," and that "[t]he writing here establishes the terms of the agreement." Because 899 ETG was a "commercially sophisticated party," the court wrote, it should not have signed the modification agreement if it did not reflect the terms to which it had agreed. The court characterized the Silberstein affidavit as "self-serving," and noted that "[t]erms that are part of the negotiation that are not part of the final agreement [are] not enforceable as they are not included in the agreement." The court did not grant the plaintiff's motion for summary judgment as to the remaining four counts of the revised complaint, as it determined that the plaintiff had provided "no evidence of any guarant[ee] . . . ."

On April 25, 2023, the plaintiff moved for a judgment of strict foreclosure. On May 8, 2023, the trial court

granted that motion as to count one of the revised complaint only and rendered a judgment of strict foreclosure, setting the first law day for September 11, 2023. This appeal followed.

I

Before turning to the merits, we address a threshold jurisdictional question with respect to the standing of the four guarantor defendants in this appeal. Although no party raised the issue in their appellate briefing, this court asked the parties to provide supplemental memoranda on the issue of whether the guarantor defendants had standing to appeal from the judgment of strict foreclosure rendered in this case in light of this court's decision in *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, 197 Conn. App. 269, 270, 231 A.3d 386 (2020). See *Deutsche Bank National Trust Co.* v. *Thompson*, 163 Conn. App. 827, 831, 136 A.3d 1277 (2016) ("the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised . . . by the court sua sponte, at any time" (internal quotation marks omitted)).

Having received the parties' briefing on this issue, we conclude that, although 899 ETG has standing to challenge the trial court's judgment, the guarantor defendants do not. The guarantor defendants concede in their supplemental memorandum that, pursuant to *World Business Lenders, LLC*, "they lack standing to appeal the judgment of foreclosure rendered on count one as to "[899 ETG]." Indeed, in *World Business Lenders, LLC*, this court observed that the guarantor in that case was not a party to the mortgage or the note and had neither a legal interest in the property securing the note, nor an equitable or statutory right of redemption in the property. *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, supra, 197 Conn. App.

278. As such, this court held that, "[b]ecause [the guarantor] was not and could not be a party to the foreclosure claim, she [had] no standing to challenge the foreclosure judgment on appeal." Id.

In the present case, it is undisputed that none of the guarantor defendants is a party to the note, mortgage, or modification agreement.[4] Neither the plaintiff nor the defendants have alleged that any of the guarantor defendants has any interest in the property or a right of redemption. In accordance with this court's holding in *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, supra, 197 Conn. App. 278–79, we conclude that the guarantor defendants lack standing to challenge the trial court's foreclosure judgment. Accordingly, we dismiss the appeal as to those defendants.

## II

Having resolved that threshold jurisdictional question, we turn to the merits of 899 ETG's claims on appeal. 899 ETG claims that the trial court erred in granting the plaintiff's motion for summary judgment because the Silberstein affidavit was sufficient to raise a genuine issue of material fact as to the defendants' unclean hands defense. Specifically, 899 ETG argues that the Silberstein affidavit contradicts the Zucker affidavit and evinces misrepresentations by the plaintiff's representative during negotiations to extend the maturity date.[5] We are not persuaded.

---

[4] David Silberstein signed all three documents but did so on behalf of 899 ETG.

[5] In their brief, the defendants set forth three questions in their statement of issues: (1) whether the trial court erred in granting the plaintiff's motion for summary judgment; (2) whether the trial court erred in concluding that there were no disputed issues of material fact; and (3) whether the trial court erred in finding that there were no disputed issues of material fact with respect to the defendants' unclean hands defense. The remainder of the brief, however, exclusively addresses the third issue. To the extent that 899 ETG challenges other portions of the trial court's decision to grant the plaintiff's motion for summary judgment—for example, its determination that the plaintiff had made out a prima facie case—it has inadequately

We begin by setting forth our standard of review and the principles that guide our analysis. "It is well established that Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 414–15, 195 A.3d 664 (2018).

In the foreclosure context, "a court may properly grant summary judgment as to liability . . . if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013). "In order to establish a prima facie case . . . the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note

briefed those arguments and, thus, has abandoned them. See, e.g., *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022) ("[when] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned" (internal quotation marks omitted)).

and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Internal quotation marks omitted.) *Goshen Mortgage, LLC* v. *Androulidakis*, 205 Conn. App. 15, 37, 257 A.3d 360, cert. denied, 338 Conn. 913, 259 A.3d 653 (2021). Defeating a motion for summary judgment requires the nonmoving party to show "evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

"Because an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands is a viable special defense." *Deutsche Bank National Trust Co.* v. *Bretoux*, 225 Conn. App. 455, 464, 317 A.3d 152 (2024). "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct

with regard to the matter in litigation. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse." (Internal quotation marks omitted.) *Homebridge Financial Services, Inc.* v. *Jakubiec*, 223 Conn. App. 517, 539, 309 A.3d 1223, cert. denied, 349 Conn. 909, 314 A.3d 602 (2024). The alleged misconduct must relate to the "making, validity, or enforcement" of the mortgage in order to serve as the predicate for an unclean hands defense. *M&T Bank* v. *Lewis*, 349 Conn. 9, 26, 312 A.3d 1040 (2024).

899 ETG contends that the plaintiff's conduct, as averred in the Silberstein affidavit, meets the standard for unclean hands established in *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 226 (2019). In *Blowers*, our Supreme Court held that the defendant in that foreclosure action could properly base an unclean hands defense on allegations of "harm resulting from a mortgagee's wrongful postorigination conduct in negotiating loan modifications, when such conduct is alleged to have materially added to the debt and substantially prevented the mortgagor from curing the default." Id., 662, 667. The court identified three scenarios in which such a defense could be raised: when the mortgagee is alleged to have "engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing [a] default, or reneged upon modifications . . . ." (Citation omitted.) Id., 675. Such misconduct, the court held, is " 'directly and inseparably connected' " to the enforcement of the note and mortgage. Id., quoting *Thompson* v. *Orcutt*, 257 Conn. 301, 313, 777 A.2d 670 (2001).

The Silberstein affidavit averred that 899 ETG entered into the modification agreement and thereby increased its indebtedness by $55,000, in reliance on the plaintiff's

false promise to grant an additional six month extension of the maturity date. These averments, 899 ETG argues, raise a genuine issue of material fact as to whether the plaintiff engaged in misconduct of the type *Blowers* has deemed sufficient to support an unclean hands defense, specifically, whether it reneged on a modification, or engaged in wrongful conduct that increased 899 ETG's debt.

The problem with this argument is that it hinges on a question of contractual intent. To find a genuine issue of material fact as to unclean hands under the rubric of *Blowers*, we would have to conclude that there was a genuine issue of fact as to whether the parties intended that a second six month extension would be offered. Otherwise, there could be no agreement to that effect on which the plaintiff reneged, and no causal nexus between the plaintiff's alleged misrepresentations and 899 ETG's decision to increase its indebtedness.

But the text of the modification agreement conclusively resolves this issue in the plaintiff's favor. It provides, without caveat, that the maturity date "shall not be further extended" past the initial six month extension. The trial court concluded, as a matter of law, that the modification agreement was integrated on this point. See *Giorgio* v. *Nukem, Inc.*, 31 Conn. App. 169, 175, 624 A.2d 896 (1993) (if trial court draws conclusions on summary judgment as to parties' intent to integrate, "based on the intent expressed in the contract itself and the affidavits submitted with the motion for summary judgment considered in light of their surrounding circumstances [then] the legal inferences to be drawn from the documents raise questions of law rather than of fact" (internal quotation marks omitted)).

Exercising our plenary review, we find little to quarrel with in this conclusion, as the modification agreement

expressly addresses the question of further extensions—the very subject matter of the plaintiff's alleged misrepresentations. See, e.g., *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 740, 557 A.2d 525 (1989) ("[a] written agreement is integrated and operates to exclude evidence of the alleged extrinsic negotiation if the subject matter of the latter is mentioned, covered, or dealt with in the writing" (internal quotation marks omitted)).[6] Because the modification agreement is integrated on this point, 899 ETG cannot manufacture a material factual dispute as to the parties' intent by pointing to parol evidence of negotiations that contradict the express written terms of the modification agreement. See *Fiorillo* v. *Hartford*, 212 Conn. App. 291, 303, 275 A.3d 628 (2022) ("[p]arol evidence offered solely to vary or contradict the written terms of an integrated contract is . . . legally irrelevant" (internal quotation marks omitted)). The only legally pertinent evidence of the parties' agreement is the text of the modification agreement itself, and it is clear, from our review of that agreement, that the parties intended that no further extensions would be granted. Bald assertions to the contrary, even in a sworn affidavit, do not call this conclusion into doubt. See, e.g., *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, 49 Conn. App. 142, 146–49, 713 A.2d 900 (assertion in affidavit that parties to note and mortgage intended their contract to benefit particular third party was insufficient to raise genuine issue of material fact as to whether that party was actually beneficiary, where "express language" of note and mortgage made no reference to that party as either direct or intended beneficiary), cert. denied, 247 Conn. 908, 719 A.2d 901 (1998).

---

[6] Although the modification agreement lacks a merger clause, the mere absence of a merger clause does not render a contract incomplete or ambiguous. See *Massey* v. *Branford*, 118 Conn. App. 491, 499, 985 A.2d 335 (2009), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010).

In the face of the parties' modification agreement, the Silberstein affidavit was insufficient to raise a genuine issue of material fact as to 899 ETG's unclean hands defense. The court thus did not err in granting summary judgment as to liability on count one of the revised complaint.

The appeal is dismissed with respect to the guarantor defendants; the judgment is affirmed and the case is remanded for the purpose of making a new finding as to the amount of the debt, for the setting of a new law day, and for other proceedings according to law.[7]

In this opinion the other judges concurred.

---

[7] See *Wahba* v. *JPMorgan Chase Bank, N.A.*, 349 Conn. 483, 508 n.10, 316 A.3d 338 (2024).